GLBT Youth in Iowa Schools Task Force, d/b/a as Iowa Safe Schools, *et al.*

*Plaintiffs - Appellees*

v.

Kimberly Reynolds, in her official capacity as Governor of the State of Iowa, *et al.*

*Defendants - Appellants*

Julie Mitchell, in their official capacities as board members of the Urbandale Community School District, *et al.*

*Defendant*s

------------------------------

PEN American Center, Inc.; One Iowa; League of Women Voters of Iowa; American Booksellers for Free Expression; Association of American Publishers, Inc.; Authors Guild, Inc.; Comic Book Legal Defense Fund; Educational Book and Media Association; Freedom to Learn Advocates; Half Price Books, Records, Magazines, Inc.; Independent Book Publishers Association; National Press Photographers Association; National Writers Union; National Education Association; The Trevor Project, Inc.; GLSEN, Inc.; Iowa School Counselor Association; Freedom to Read Foundation; Iowa Library Association; American Association of School Librarians; Constitutional Law Professors at Law Schools Throughout the Eighth Circuit; Sisters in Crime

*Amici on Behalf of Appellees*

Appellate Case: 24-1075     Page: 1     Date Filed: 08/09/2024 Entry ID: 5422693

_____

No. 24-1082
_____

Penguin Random House, LLC, *et al.*

*Plaintiffs - Appellees*

v.

John Robbins, in his official capacity as President of the Iowa State Board of Education, *et al.*

*Defendants - Appellants*

Rosalie Daca, in her official capacity as Urbandale Community School District Superintendent, *et al.*

*Defendants*

------------------------------

PEN American Center, Inc.; American Booksellers for Free Expression; Association of American Publishers, Inc.; Authors Guild, Inc.; Comic Book Legal Defense Fund; Educational Book and Media Association; Freedom to Learn Advocates; Half Price Books, Records, Magazines, Inc.; Independent Book Publishers Association; National Press Photographers Association; National Writers Union; Sisters in Crime; National Education Association; Freedom to Read Foundation; Iowa Library Association; American Association of School Librarians; Foundation for Individual Rights and Expression

*Amici on Behalf of Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa
_____

Submitted: June 11, 2024
Filed: August 9, 2024

_____

Before LOKEN, ERICKSON, and GRASZ, Circuit Judges.

_____

ERICKSON, Circuit Judge.

In May 2023, Iowa's Governor signed into law Senate File 496 ("SF496"), which changed Iowa's law in three ways. First, effective on January 1, 2024, it added regulations regarding books in Iowa's public-school libraries by amending Iowa Code § 256.11 ("Library Program"). Second, as of July 1, 2023, it imposed additional regulations pertaining to public school classrooms and curriculum by enacting Iowa Code § 279.80 and referring to it in Iowa Code § 256.11 ("Instruction Section"). Third, it enacted Iowa Code § 279.78, which took effect on July 1, 2023, requiring public school districts to notify a child's parents if the child asks for the use of pronouns that do not match the school's registration records or otherwise seeks an accommodation relating to gender identity ("Notification Law").

Two groups of plaintiffs sued to enjoin SF496. Iowa appeals the preliminary injunction granted by the district court enjoining SF496. Because the district court entered the injunction based on a flawed analysis of the law, we reverse the district court's decision and vacate the injunction. We remand this case to the district court for further proceedings consistent with this opinion.

I.  BACKGROUND

About a month before Iowa's Library Program was scheduled to go into effect, eight Iowa students and a non-profit organization, GLBT Youth in Iowa Schools Task Force d/b/a Iowa Safe Schools commenced an action alleging SF496 violates the First Amendment, their right to equal protection under the Fourteenth Amendment, and their rights under the Equal Access Act ("the GLBT case").

Plaintiffs moved for a preliminary injunction to enjoin enforcement of SF496 as against five of Iowa's public school districts, the districts' superintendents, the members of the districts' school boards, Iowa's Governor, Iowa's Director of Department of Education, and Iowa's State Board of Education.

Two days after the GLBT case was initiated, Penguin Random House LLC, several authors, a parent, Iowa State Education Association, and Iowa educators commenced a similar action against the President of the Iowa State Board of Education, the Director of the Iowa State Department of Education, the Chair of Iowa State Board of Educational Examiners, the districts' superintendents, and the districts' school board of directors ("the PRH case").

The district court quickly observed that both cases related to the same legislation, with some portions scheduled to take effect in a month, and had considerable overlap such that the cases would benefit from joint administration. The court informed the parties that it intended to hold a single, consolidated hearing and ordered the PRH Plaintiffs if they wanted to participate in the consolidated hearing to move for a preliminary injunction on or before December 12, 2023. The PRH Plaintiffs responded to the court, indicating a desire for their case to be litigated first and requesting their motion be heard separately, as the injunctive relief they were seeking was narrower. The district court denied the request.

Following an expedited hearing on December 22, 2023, the court issued an opinion and order enjoining all Defendants from enforcing or acting in furtherance of the provisions of SF496 which: (i) require the removal of books from school libraries that are not age-appropriate, and (ii) prohibit any "program, curriculum, test, survey, questionnaire, promotion, or instruction relating to gender identity or sexual orientation to students in kindergarten through grade six." Iowa Code § 279.80. This interlocutory appeal followed.

## II.  DISCUSSION

    A.    <u>Standing</u>

We review standing *de novo*. <u>Dalton v. NPC Int'l, Inc.</u>, 932 F.3d 693, 695 (8th Cir. 2019). When considering standing at the preliminary injunction stage, we assume the complaint's allegations are true and view them in the light most favorable to the plaintiffs. <u>Dakotans for Health v. Noem</u>, 52 F.4th 381, 386 (8th Cir. 2022).

    *i.*    *The Library Program (The Government Speech Doctrine)*

"The First Amendment standing inquiry is 'lenient' and 'forgiving.'" <u>Id.</u> (quoting <u>Turtle Island Foods, SPC v. Thompson</u>, 992 F.3d 694, 699-700 (8th Cir. 2021)). "This leniency 'manifests itself most commonly in the doctrine's first element: injury-in-fact.'" <u>Id.</u> (citation omitted). "And when, as here, 'threatened enforcement effort implicates First Amendment rights, the [standing] inquiry tilts dramatically toward a finding of standing.'" <u>Id.</u> (citation omitted).

Defendants argue that all Plaintiffs lack standing because the removal of books from public school libraries constitutes government speech. Under the government speech doctrine, courts recognize that the First Amendment's Free Speech Clause does not impose "a requirement of viewpoint-neutrality on government speech." <u>Matal v. Tam</u>, 582 U.S. 218, 234 (2017) ("When a government entity embarks on a course of action, it necessarily takes a particular viewpoint and rejects others. The Free Speech Clause does not require government to maintain viewpoint neutrality when its officers and employees speak about that venture."). "It is crucial, however, not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 591 (8th Cir. 2009).

Plaintiffs are challenging the pre-enforcement of the Library Program. They can satisfy the injury-in-fact requirement by alleging (1) "an intention to engage in

-5-

a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "a credible threat of prosecution" exists. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159-60 (2014) (quoting Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)). So long as the intended future conduct alleged by the plaintiffs is arguably proscribed by the statute it is challenging, they have standing under the lenient and forgiving standard articulated by the Supreme Court. Thompson, 992 F.3d at 699-700.

Contrary to Defendants' contention, the Supreme Court has not extended the government speech doctrine to the placement and removal of books in public school libraries. In 2022, the Supreme Court outlined a "holistic inquiry," which includes several considerations for determining whether the government intends to speak for itself or to regulate private expression: (1) the history of the expression at issue; (2) the public's likely perception as to who is speaking; and (3) the extent to which the government has actively shaped or controlled the expression. Shurtleff v. Boston, 596 U.S. 243, 252 (2022).

Here, the expression at issue is the placement and removal of books in public school libraries. While Defendants point to a monument case, Pleasant Grove City v. Summum, 555 U.S. 460 (2009), we find reliance on that case unavailing as public school libraries do not share the characteristics of monuments in a park. In Matal, the Supreme Court detailed the characteristics of park monuments, recognizing that "[g]overnments have used monuments to speak to the public since ancient times; parks have traditionally been selective in accepting and displaying donated monuments; parks would be overrun if they were obligated to accept all monuments offered by private groups; '[p]ublic parks are often closely identified in the public mind with the government unit that owns the land'; and 'the monuments that are accepted . . . are meant to convey and have the effect of conveying a government message.'" 582 U.S. at 238 (quoting Summum, 555 U.S. at 472).

Regarding the second consideration, it is doubtful that the public would view the placement and removal of books in public school libraries as the government

speaking. Take routine examples of historic tomes on political science. A well-appointed school library could include copies of Plato's *The Republic,* Machiavelli's *The Prince,* Thomas Hobbes' *Leviathan,* Karl Marx and Freidrich Engels' *Das Kapital,* Adolph Hitler's *Mein Kampf,* and Alexis de Tocqueville's *Democracy in America*. As Plaintiffs noted, if placing these books on the shelf of public school libraries constitutes government speech, the State "is babbling prodigiously and incoherently." Id. at 236.

When considering the extent to which the government has actively controlled the collection of books in public school libraries to shape the messages, this factor favors Plaintiffs as historically the government of Iowa has not asserted extensive control over removing books from public school libraries. See Shurtleff, 596 U.S. at 258 (stating "the city's lack of meaningful involvement in the selection of flags or the crafting of their messages leads us to classify the flag raisings as private, not government, speech"). Based on the considerations set forth by the Supreme Court combined with the Court's directive to "exercise great caution before extending our government-speech precedents," Matal, 582 U.S. at 235, we find Plaintiffs have standing to pursue their First Amendment claim as to the Library Program.

### ii. Instruction Section

The district court held only one student from the GLBT Plaintiffs, A.C., had standing to challenge the Instruction Section. A.C. is the only plaintiff who was in grade six or below and was directly affected by SF496's Instruction Section. Prior to SF496's enactment, A.C., who has identified as transgender since the age of three, was active in her school's Genders & Sexualities Alliance club ("GSA"). But when SF496 was enacted, A.C.'s school district applied the Instruction Section and barred the GSA for any child in grade six or below. Since the school district's decision, A.C. has not been able to attend her GSA's meetings.

Shutting down a voluntary, extracurricular club because of its views can impair the First Amendment's right to expressive freedom of association. Roberts

-7-

v. U.S. Jaycees, 468 U.S. 609, 618 (1984). The district court held that the school district's actions impaired A.C.'s First Amendment right to expressive freedom of association, and the State does not contest this is an injury in fact. Instead, the State argues that A.C.'s injury is not traceable to the Instruction Section. The State contends that, when properly interpreted, the Instruction Section does not require school districts to prohibit voluntary, extracurricular clubs. They assert the school district "over-read" the section leading to a "dramatic over-coverage" of the section such that the harm A.C. incurred is not really the result of the Instruction Section but an aggressive reading by the school district. We are unconvinced.

Approval of the State's theory will create a standing paradox: A.C. would not have standing because a proper interpretation of the Instruction Section shows A.C.'s school district overreacted; but A.C. cannot reach the merits of interpreting SF496 to show the school district overreacted because A.C. cannot establish standing. In the meantime, A.C.'s injury is unaddressed. Here, the record shows that because of the Instruction Section, A.C.'s school district prohibited GSA meetings. Even if it is due to a misreading of the statute, A.C.'s injury is traceable to the Instruction Section, and an injunction would redress that injury. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992); Hershey v. Jasinski, 86 F.4th 1224, 1230 (8th Cir. 2023) (stating the plaintiff's actual injuries were traceable to defendant's enforcement, and they were redressable because an injunction would redress those injuries). Because at least one GLBT Plaintiff, A.C., has standing to bring a facial challenge, we need not address the other GLBT Plaintiffs' standing.[1]

### B. Preliminary Injunction

"A district court has broad discretion when ruling on a request for preliminary injunction, and it will be reversed only for clearly erroneous factual determinations,

---

[1] As with the Library Program, the State does not contest the standing of the educators among the PRH Plaintiffs to challenge the Instruction Section, and we agree with the district court's conclusions that some of the PRH Plaintiffs have standing to challenge the Instruction Section.

-8-

Appellate Case: 24-1075    Page: 8    Date Filed: 08/09/2024 Entry ID: 5422693

an error of law, or an abuse of its discretion." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 893 (8th Cir. 2013) (internal citation omitted). "Abuse of discretion occurs if the district court rests its conclusion on clearly erroneous factual findings or if its decision relies on erroneous legal conclusions." PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1142 (8th Cir. 2007).

Plaintiffs bring this case as a facial challenge to SF496. The Supreme Court recently reiterated how courts are to address facial challenges, noting they should be "hard to win." Moody v. NetChoice, LLC, 144 S. Ct. 2383, 2397 (2024) (Because "facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways," courts ought to "handle constitutional claims case by case, not en masse" (cleaned up)). "In the First Amendment context, . . . 'a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" Americans for Prosperity Found. v. Bonta, 594 U.S. 595, 615 (2021) (quoting United States v. Stevens, 559 U.S. 460, 473 (2010)). Invalidating a law on this basis should only be done as "a last resort," Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973), particularly since facial challenges involve a heightened risk of a premature interpretation of a statute based on a barebones record. Phelps–Roper v. City of Manchester, 697 F.3d 678, 685 (8th Cir. 2012).

The first step in a proper facial analysis is to assess the laws' scope, which includes consideration of what activities by what actors do the laws prohibit or regulate. NetChoice, LLC, 144 S. Ct. at 2398. After that assessment is completed, the next step in the process is to determine which of the laws' applications violate the First Amendment. Id. Once the court has made that determination, it then must measure the unconstitutional applications against the remaining provisions. Id. Here, the district court, in analyzing the facial challenge to the Library Program, weighed the number of books justifying the restrictions against the number of books identified by the PRH Plaintiffs that have been swept up in the restrictions. But for facial challenges, "the question . . . is whether a law's unconstitutional applications are substantial compared to its constitutional ones." Id. at 2394. The district court

did not perform the necessary inquiry set forth in NetChoice. Nor did the district court address the as-applied challenges that Plaintiffs raised below.

Because the district court entered an injunction based on a flawed analysis of the applicable law, we reverse the district court's decision and vacate the preliminary injunction enjoining enforcement of SF496. See Nooner v. Norris, 491 F.3d 804, 810 (8th Cir. 2007) (reversing preliminary injunction because the district court failed to apply the correct legal standard); City of Timber Lake v. Cheyenne River Sioux Tribe, 10 F.3d 554, 559 (8th Cir. 1993) (reversing the issuance of a preliminary injunction based on an error of law); see also Bell v. Sellevold, 713 F.2d 1396, 1399 (8th Cir. 1983) (stating that if the district court's order granting preliminary relief rests on a mistaken legal basis, "then we may and should reverse, whatever the relative equities of the parties may be").

We note that the district court concluded that the Library Provision is a viewpoint-neutral, content-based, age-appropriate restriction on the content of public school libraries, and we agree. The purpose of public school libraries is to advance the school curriculum—that is, to facilitate the pedagogical mission of the school, which may involve some limitation of expression. See Henerey ex rel. Henerey v. City of St. Charles, Sch. Dist., 200 F.3d 1128, 1133-36 (8th Cir. 1999) (holding that a school district could restrict a student's campaign speech for class president as it was a school-sponsored activity that was part of the curriculum and the district need not allow speech that was inconsistent with the its legitimate pedagogical concerns); and See Iowa Code § 256.11(9)(a)(2); Iowa Admin. Code 281-12.2(256). The pedagogical mission of the school allows for tailoring to provide for "the teaching of basic skills and ideas." See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 915(1982) (Rehnquist, C.J., dissenting); Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 272-73 (1988) ("[T]he standard . . . for determining when a school may [limit] expression need not also be the standard for determining when a school may refuse to lend its name and resources to the dissemination of . . . expression."). Given the pedagogical mission and the policy making authority possessed by Iowa, it is important in conducting a

-10-

review and analysis to bear in mind that Iowa is not required to tolerate speech that undermines or is inconsistent with its central mission of educating Iowa children.

Meanwhile, the district court insisted the Instruction Section could only be interpreted in an "absurd" manner, an interpretation not shared by the defendants and even some of the Plaintiffs. The district court imparted its interpretation without referencing several canons of construction that may have revealed a narrower, reasonable interpretation, such as the canons of constitutional-avoidance, *noscitur a sociis*, and Iowa's admonition to interpret its laws reasonably and in a manner feasible of execution, Iowa Code § 4.4(3)-(4). Other interpretive methods should be discussed and exhausted before concluding the only textual interpretation is an absurd one because the resulting interpretation inevitably bears on whether the law's applications are constitutional or not.

As to the as-applied challenges, we may reverse the grant of a preliminary injunction without considering alternative contentions raised but not addressed by the district court. See City of Timber Lake, 10 F.3d at 559.

## III. CONCLUSION

Because the district court issued a preliminary injunction based on a flawed analysis of the law, we reverse its decision and vacate the preliminary injunction. This case is hereby remanded to the district court for further proceedings consistent with this opinion. On remand, Plaintiffs are free to pursue injunctive relief in the manner required by NetChoice as well as the unaddressed as-applied challenges. The motion to modify the caption has been considered by the Court and is denied.

_____